### UNITED STATES BANKRUPTCY COURT
### NORTHERN DISTRICT OF ILLINOIS
### WESTERN DIVISION

| | |
|---|---|
| In re Gluth Bros. Construction, Inc.,<br><br>Debtor.<br><br>-------------------------------------------------<br>Charles Dixon and Charles Graeber, Jr.,<br>not in their individual capacities but<br>solely as Trustees of the Gluth Bros.<br>Construction, Inc. Creditor Trust,<br><br>Plaintiff,<br><br>v.<br><br> Charles W. Ruth; Alliance Contractors,<br>Inc.; Ruth Development Company, Inc.;<br>Cheers Holdings, LLC; and Alliance<br>Contractors, Inc and Gluth Bros.<br>Construction, Inc. Joint Venture<br><br>Defendants. | Bankruptcy No.  07-B-71375<br>Adversary No. 09-A-96133<br>Chapter 11<br>Judge Manuel Barbosa |

### MEMORANDUM OPINION

This matter comes before the Court on Defendants' Motion to Dismiss Adversary Complaint. For the reasons set forth herein, the Court will grant the Defendants' motion to dismiss each of the counts of the Adversary Complaint.  However, the Court will grant leave for the Plaintiff to file an amended adversary complaint, if it desires, within thirty days consistent with this opinion.

### JURISDICTION AND PROCEDURE

The Court has jurisdiction to decide this matter pursuant to 28 U.S.C. § 1334 and Internal

Page 1 of  15

Operating Procedure 15(a) of the United States District Court for the Northern District of Illinois.

It is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A), (E), (H) and (O).

## FACTS AND BACKGROUND

The following facts and procedural history are taken from Plaintiff's adversary complaint and opposition to Defendants' motion to dismiss, as well as the Defendants' motion to dismiss and strike, memorandum in support of motion to dismiss and strike, and reply to Plaintiff's opposition (collectively, the "pleadings"), and from all attachments to the pleadings referred to and incorporated therein. Because the matter is before the Court on a motion to dismiss, the Court accepts as true all of the factual allegations contained in the adversary complaint. See, e.g., Erikson v. Pardus, 551 U.S. 89, 93-94 (2007); Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555-56 (2007).

The Debtor filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code with this Court on June 5, 2007. On March 4, 2009, the Court entered an order confirming the Plan of Liquidation Dated January 27, 2009 (the "Plan"). Pursuant to the Plan, and the Gluth Bros. Construction, Inc. Creditor Trust Agreement, entered into among the Debtor, the Official Committee of Unsecured Creditors and the Creditor Trustees, all remaining property of the Debtor's estate, including causes of action, were vested in the Creditor Trust, and the Creditor Trustees were granted the authority to commence actions.

The Defendants are Charles Ruth ("Ruth"), an individual, and several entities he is affiliated with: Alliance Contractors, Inc. ("Alliance"), of which Ruth is president, Cheers Holdings, LLC ("Cheers"), of which Ruth is sole owner and manager, Ruth Development Company, Inc. ("Ruth

Development"), of which Ruth is president, and a joint venture ("Joint Venture"), which was originally between the Debtor and Alliance, but for which the Debtor has sold its interest to Ruth Development.

### The Transfer of the Joint Venture Interest

The Joint Venture was formed by an agreement entered into between the Debtor and Alliance on July 27, 1984, pursuant to which the Debtor and Alliance agreed they would bid and work on projects together and then share in their proceeds. The Debtor and Alliance also each agreed to rent to the Joint Venture equipment needed for the performance of necessary Joint Venture work. The Joint Venture had at least two banking accounts (the "JV Checking Account" and the "JV Savings Account"). On May 14, 2007, the Debtor sold its entire interest in the Joint Venture to Ruth Development in exchange for $30,921.90. At the time of sale, the JV Savings Account had a balance of over $89,000. On May 29, 2007, the State of Illinois transferred $230,054.01 into the JV Checking Account for fees earned by the Joint Venture prior to the sale date on a construction project. On June 1, 2007, Alliance withdrew $199,132.11 from the JV Checking Account, and Ruth Development withdrew $30,921.90 from the JV Checking Account. On September 17, 2008, the $89,467.20 balance in the JV Savings Account was transferred to the JV Checking Account. On September 19, 2008, Ruth withdrew all funds in the JV Checking Account, totaling $91,476.39, and closed the account.

### The Real Estate Transaction

The Complaint also spends a number of paragraphs discussing a real estate transaction that the Plaintiff admits never closed. The Debtor's business sits on five parcels of real estate, of which

three are owned by Mr. Gluth individually, one is owned by the Debtor, and one is owned by a land trust of which Mr. Gluth claims he is the beneficiary, but the Plaintiff alleges the Debtor is the beneficiary. The Plaintiff alleges that Mr. Gluth and Mr. Ruth entered into a sale agreement before the petition date to sell all five parcels of land to Mr. Ruth for $3.6 million. However, the Plaintiff admits that the sale did not close before the petition date. The Plaintiff also alleges that in October 2007, Mr. Gluth purported to grant a right of first refusal in all five parcels of land to Cheers in exchange for $1,000. The Plaintiff alleges that in October 2007, after the petition date, Ruth paid Mr. Gluth $2.8 million, purportedly in exchange for 40,000 shares of bank stock unrelated to the real estate that Mr. Gluth sold to Mr. Ruth. However, the Plaintiff alleges that Mr. Gluth had only 5,000 shares of bank stock at the time. From this, the Plaintiff contends the money was not for a sale of unrelated stock, but rather was intended as a purchase price for the real estate. But, while the Plaintiff alleges that Ruth intended the $2.8 million to be a payment for the real estate, the Plaintiff does not allege that the real estate was in fact sold or that Mr. Gluth even had the power to sell any real estate that was owned by the Debtor.

## DISCUSSION

### Standard under 12(b)(6), Rule 8 and Rule 9(b)

A motion to dismiss under Fed. R. Civ. P. 12(b)(6), made applicable by Fed. R. Bankr. P. 7012,[1] tests the sufficiency of the complaint, rather than the merits of the case. In re Irmen, 379 B.R. 299, 307 (Bankr. N.D. Ill. 2007) (citing Gibson v. City of Chicago, 910 F.2d 1510, 1520 (7th Cir.

---

[1]Unless otherwise noted, references to Rules herein shall be references to the Federal Rules of Civil Procedure, as incorporated by the relevant Federal Rule of Bankruptcy Procedure.

1990)). Under Rule 12(b)(6), a court must take as true all facts alleged in the complaint and construe

all reasonable inferences in favor of the plaintiff. See Murphy v. Walker, 51 F.3d 714, 717 (7th Cir.

1995); Neiman v. Irmen (In re Irmen), 379 B.R. 299, 307 (Bankr. N.D. Ill. 2007).

The Debtor argues that the Plaintiff's Complaint does not adequately plead the claims for

relief under Rule 8, or meet the higher pleading standards for fraud under Rule 9(b), and should

therefore be dismissed under Rule 12(b)(6). Under Rule 8(a), a pleading for a claim for relief must

contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed.

R. Civ. P. 8. The "Rule reflects a liberal notice pleading regime, which is intended to focus litigation

on the merits of a claim rather than on technicalities that might keep plaintiffs out of court." Brooks

v. Ross, 578 F.3d 574, 580 (7th Cir. Aug. 20, 2009) (citing Swierkiewicz v. Sorema N.A., 534 U.S.

506, 514 (2002)). The focus of the Rule is to "give the defendant fair notice of what ... the claim is

and the grounds upon which it rests." Brooks, 578 F.3d at 581(citing Erickson v. Pardus, 551 U.S.

89, 93 (2007)). While this does not require "detailed factual allegations," a "formulaic recitation of

the elements of a cause of action will not do." Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (May 18,

2009). Instead, the complaint must contain "enough facts to state a claim to relief that is plausible

on its face." Twombly, 550 U.S. at 570. The plausibility standard is not a "probability standard,"

but it is higher than mere possibility, so the well-pleaded facts cannot be "merely consistent with a

defendant's liability," but must demonstrate a plausible "entitlement to relief." Iqbal, 129 S. Ct. at

1949 (citing Twombly, 550 U.S. at 556-57). As the Seventh Circuit has recently stated, "courts must

accept a plaintiff's factual allegations as true, but some factual allegations will be so sketchy or

implausible that they fail to provide sufficient notice to defendants of the plaintiff's claim." Brooks,

578 F.3d at 581.

Where fraud is alleged, a more rigorous pleading standard comes into play. In re Jacobs, 403 B.R. 565, 573 (Bankr. N.D. Ill. Apr. 9, 2009). "In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." Id. (quoting Fed. R. Civ. P. 9(b)). Thus, a plaintiff must state the "'who, what, when, and where' of the alleged fraud." Id. (quoting Uni*Quality, Inc. v. Infotronx, Inc., 974 F.2d 918, 923 (7th Cir. 1992)). An adversary complaint should not merely assert allegations that "are conclusory or based on 'information and belief.'" Irmen, 379 B.R. at 310; see also John Deere Co. v. Broholm (In re Broholm), 310 B.R. 864, 875 (Bankr. N.D. Ill. 2004) (citing Veal v. First Am. Sav. Bank, 914 F.2d 909, 913 (7th Cir. 1990)). If Rule 9(b) has not been satisfied, the Court may grant leave for movant to file an amended adversary complaint. Kaye v. City of Milwaukee, No. 06-3139, 2007 U.S. App. LEXIS 29339, at *4 (7th Cir. 2007).

### I. Avoidance of Debtor's Transfers – 11 U.S.C. §§ 544(b)(1), 548

Pursuant to 11 U.S.C. § 544(b)(1), the trustee can avoid any transaction of the debtor that would be voidable by any actual unsecured creditor under state law. In re Image Worldwide, Ltd., 139 F.3d 574, 576-77 (7th Cir. 1998); Grochocinski v. Zeigler (In re Zeigler), 320 B.R. 362, 371 (Bankr. N.D. Ill. 2005). Section 544(b)(1) provides, in pertinent part:

> [T]he trustee may avoid any transfer of an interest of the debtor in property or any obligation incurred by the debtor that is voidable under applicable law by a creditor holding an unsecured claim that is allowable under section 502 of this title or that is not allowable only under section 502(e) of this title.

11 U.S.C. § 544(b)(1) (West 2009). The residence or main place of business of both the Debtor and

each of the Defendants is in Illinois, and all of the purported transactions took place in Illinois. The

Plaintiff claims that certain prepetition transfers of the Debtor's property, including the sale of its

interest in the Joint Venture, were fraudulent transfers in violation of the Illinois Uniform Fraudulent

Transfer Act ("UFTA"), 740 Ill. Comp. Stat. 160/5(a)(1) and 160/5(a)(2) and fraudulent transfers

under 11 U.S.C. § 548(a)(1). "Because the provisions of the UFTA parallel § 548 of the Bankruptcy

Code, findings made under the Bankruptcy Code are applicable to actions under the UFTA."

Zeigler, 320 B.R. at 372 (citing Levit v. Spatz (In re Spatz), 222 B.R. 157, 164 (N.D. Ill. 1998); In

re Image Worldwide, Ltd., 139 F.3d at 577).

## A. 740 Ill. Comp. Stat. 160/5(a)(1) ("Fraud-in-fact"); 740 Ill. Comp. Stat. 160/5(b) ("Badges of Fraud"); 11 U.S.C. § 548(a)(1)(A) Standards

740 Ill. Comp. Stat. 160/5(a)(1) provides that:

(a) A transfer made or obligation incurred by a debtor is fraudulent as to a creditor, whether the creditor's claim arose before or after the transfer was made or the obligation was incurred, if the debtor made the transfer or incurred the obligation:
(1) with actual intent to hinder, delay, or defraud any creditor of the debtor[.]

740 Ill. Comp. Stat. 160/5(a)(1) (West 2009).

§ 5(a)(1) of the UFTA applies to "fraud in fact" or actual fraud, and the moving party must

prove that there was a specific intent to hinder, delay or defraud. Zeigler, 320 B.R. at 372 (citing

Lindholm v. Holtz, 581 N.E.2d 860, 863 (Ill. App. Ct. 1991)). The UFTA sets forth several factors

under 740 Ill. Comp. Stat. 160/5(b)(1)-(11), known as the "badges of fraud," from which an

inference of fraudulent intent may be drawn. Id. at 373. Specifically, the Illinois UFTA sets forth

eleven "badges of fraud," under 740 <u>Ill. Comp. Stat.</u> 160/5(b)(1)-(11), which provides:

> (b) In determining actual intent under paragraph (1) of subsection (a), consideration may be given, among other factors, to whether:
>> (1) the transfer or obligation was to an insider;
>> (2) the debtor retained possession or control of the property transferred after the transfer;
>> (3) the transfer or obligation was disclosed or concealed;
>> (4) before the transfer was made or obligation was incurred, the debtor had been sued or threatened with suit;
>> (5) the transfer was of substantially all the debtor's assets;
>> (6) the debtor absconded;
>> (7) the debtor removed or concealed assets;
>> (8) the value of the consideration received by the debtor was reasonably equivalent to the value of the asset transferred or the amount of the obligation incurred;
>> (9) the debtor was insolvent or became insolvent shortly after the transfer was made or the obligation was incurred;
>> (10) the transfer occurred shortly before or shortly after a substantial debt was incurred; and
>> (11) the debtor transferred the essential assets of the business to a lienor who transferred the assets to an insider of the debtor.

740 <u>Ill. Comp. Stat.</u> 160/5(b)(1)-(11) (West 2009).  When these "badges of fraud" are present in

sufficient number, they may give rise to an inference or presumption of fraud. <u>Zeigler</u>, 320 B.R. at

373 (citing <u>Steel Co. v. Morgan Marshall Indus., Inc.</u>, 662 N.E.2d 595, 602 (Ill. App. Ct. 1996)).

Under the Federal Rules of Evidence, "a presumption imposes on the party against whom it is

directed the burden of going forward with evidence to rebut or meet the presumption, but does not

shift to such party the burden of proof in the sense of the risk of nonpersuasion, which remains

throughout the trial upon the party on whom it was originally cast." <u>Id.</u> (quoting Fed. R. Evid. 301).

The presence of seven badges of fraud has been held sufficient to raise a presumption of fraudulent

intent. <u>Id.</u> (citing <u>Berland v. Mussa (In re Mussa)</u>, 215 B.R. 158, 170 (Bankr. N.D. Ill. 1997)).

**B. 740 Ill. Comp. Stat. 160/5(a)(2) ("Fraud-in-law"); 11 U.S.C. § 548(a)(1)(A) Standards**

740 Ill. Comp. Stat. 160/5(a)(2) provides that:

(a) A transfer made or obligation incurred by a debtor is fraudulent as to a creditor, whether the creditor's claim arose before or after the transfer was made or the obligation was incurred, if the debtor made the transfer or incurred the obligation:

. . . .

(2) without receiving a reasonably equivalent value in exchange for the transfer or obligation, and the debtor:

(A) was engaged or was about to engage in a business or a transaction for which the remaining assets of the debtor were unreasonably small in relation to the business or transaction; or

(B) intended to incur, or believed or reasonably should have believed that he would incur, debts beyond his ability to pay as they became due.

740 Ill. Comp. Stat. 160/5(a)(2) (West 2009).

§ 5(a)(1) of the UFTA applies to constructive fraud, or "fraud in law," and does not require proof of actual intent to defraud. Wachovia Securities, LLC v. Jahelka, 586 F. Supp. 2d 972, 1015 (N.D. Ill. 2008) (citing Gen. Elec. Capital Corp. v. Lease Resolution Corp., 128 F.3d 1074, 1079 (7th Cir.1997); Scholes v. Lehmann, 56 F.3d 750, 757 (7th Cir.1995)). Instead, transfers made for less than reasonably equivalent value, leaving a debtor unable to meet its obligations, are deemed or presumed to be fraudulent. Id. (citing Zeigler, 320 B.R. at 374). Whether "reasonably equivalent value" has been given is generally a question of fact. Id.

In order for the movant to establish that a conveyance is fraudulent in law, four elements must be present: (1) the debtor made voluntary transfers; (2) at the time of the transfers, the debtor had incurred obligations elsewhere; (3) the debtor made the transfers without receiving a reasonably equivalent value in exchange for the transfers; and (4) after the transfers, the debtor failed to retain sufficient property to pay their indebtedness. In re Zeigler, 320 B.R. at 374 (citing Lease Resolution

Corp., 128 F.3d at 1079).

To determine whether reasonably equivalent value is received under the UFTA, courts consider how that phrase has been construed under the Bankruptcy Code. Wachovia, 586 F. Supp. 2d at 1015 (citing Zeigler, 320 B.R. at 374-75; In re Image Worldwide, Ltd., 139 F.3d 574, 577 (7th Cir.1998)). The Seventh Circuit has recognized that there is no fixed formula for determining reasonable equivalence. Barber v. Golden Seed Co., 129 F.3d 382, 387 (7th Cir.1997). That determination will depend on all the facts of each case. Id. Several factors utilized to determine reasonably equivalent value include: (1) whether the value of what was transferred is equal to the value of what was received; (2) the market value of what was transferred and received; (3) whether the transaction took place at arm's length; and (4) the good faith of the transferee. Wachovia, 586 F. Supp. 2d at 1015 (citing Zeigler, 320 B.R. at 374-75; Grigsby v. Carmell (In re Apex Auto. Warehouse, L.P.), 238 B.R. 758, 773 (Bankr. N.D. Ill. 1999)). "Reasonably equivalent value is measured at the time of the transfer." Id. (citing Zeigler, 320 B.R. at 374-75). Nominal consideration is inadequate to satisfy the reasonably equivalent value standard. Id. (citing Zeigler, 320 B.R. at 374-75).

## C. Application

The Plaintiff alleges that the Debtor made a fraudulent transfer by selling its interest in the Joint Venture to Ruth Development for less than a reasonably equivalent value.[2] The Plaintiff

---

[2]The Plaintiff also argues that the withdrawals of funds from the Joint Venture's bank accounts were fraudulent transfers. However, at the time of the withdrawals, the Debtor did not own the Joint Venture, and therefore did not even have a beneficial interest in the accounts. For this reason, the withdrawals were not fraudulent transfers of the Debtor. To the extent that the

alleges that the Debtor sold its interest in the Joint Venture to Ruth Development on May 14, 2007 for $30,921.90. However, the Plaintiff alleges that the value of the Joint Venture was worth at least $320,000 at that time, meaning that the Debtor's interest was worth at least 5 times what Ruth Development paid. The Plaintiff points to the fact that there was over $89,000 in the Joint Venture's savings account at the time of sale and the Joint Venture had a right to payment of over $230,000 in fees from the State of Illinois, which were deposited into the Joint Venture's checking account two weeks after the sale. While the assets of a company alone do not necessarily represent its value, since any liabilities would decrease that value, for purposes of a motion to dismiss the Plaintiff has sufficiently pled facts to support the allegation that the sale of the Joint Venture interest was for less than a reasonably equivalent value.

However, the Plaintiff has offered no factual allegations to support its claim that the Debtor was insolvent at the time of the transfer or became insolvent because of the transfer. Instead, the complaint merely gives a formulaic recitation of the element, stating that "Upon information and belief, the Debtor was insolvent, became insolvent, and/or had unreasonably small capital in relation to its business at the time, or as a result, of the Fraudulent Transfers." (Compl. ¶ 58). As the creditor trustee, the Plaintiff should have enough access to information on the Debtor's finances to be able to allege at least some minimal factual support for its allegation. But, under the standard set forth in Iqbal, the Plaintiff has failed to plead this element, and therefore has not sufficiently pled a

---

funds represent either part of the Debtor's original interest in the Joint Venture or proceeds of such interest in the Joint Venture, however, and to the extent the Plaintiff is successful in avoiding the transfer of the Joint Venture interest as a fraudulent transfer, the Debtor may be able to seek to recover the funds from subsequent transferees under 11 U.S.C. § 550(a).

complaint under the constructive fraud or "fraud in law" sections of the UFTA and 11 U.S.C. §
548(a)(1)(B).

Similarly, the Plaintiff has not sufficiently pled any facts to support a claim for fraudulent
transfer under the actual fraud or "fraud in fact" sections of the UFTA or 11 U.S.C. § 548(a)(1)(B).
Other than stating that the transfers were made "with knowledge that the transfer would hinder,
delay, or defraud the creditors' recovery," the Plaintiff has alleged no facts to support an allegation
of actual fraud.  This statement is simply a recitation of an element of the claim, which is not
sufficient under the standard set forth in Iqbal, and certainly not sufficient for the heightened
pleading standards of Rule 9(b).  Nor has the Plaintiff alleged facts to support any "badges of fraud"
other than insufficient consideration.  While the Plaintiff alleges that there was secrecy surrounding
the attempted real estate transaction, that transaction was unconnected to the transfer of the Joint
Venture interest and therefore irrelevant.  Therefore, the Plaintiff has failed to state a claim under
the actual fraud or "fraud in fact" sections of the UFTA and 11 U.S.C. § 548(a)(1)(A).

Because the Plaintiff has failed to sufficiently plead a claim under § 160/5(a)(1) or (2) of the
UFTA or 11 U.S.C. § 548(a)(1), it has also failed to plead a claim under Section 550 for the recovery
of such transfers.

### II. Avoidance of Post-Petition Date Transfers

11 U.S.C. § 549(a) gives the trustee the power to avoid a transfer of property of the estate that
occurs after the commencement of the case and not authorized by the Bankruptcy Code or the Court.
However, none of the purported post-petition date transfers were transfers of property of the estate.

The Plaintiff has not argued for, or alleged facts to support an argument for, piercing the corporate veil or treating the Debtor as merely the alter ego of Mr. Gluth. The Plaintiff alleges that Mr. Gluth purported to grant to Cheers a "right of first refusal" on a group of five pieces of real estate property, at least three of which he owned. Even assuming a right of first refusal is a "property interest," it could only be a property interest to the extent that it is valid and enforceable. But, to the extent that Mr. Gluth did not own the real estate he could not grant a right of first refusal in it, and there is no allegation that Mr. Gluth validly acted on behalf of the Debtor or even had the power to do so. On the other hand, to the extent Mr. Gluth did own the real estate, then, since he is separate from the Debtor, a grant of a right of first refusal would not be a transfer of property of the estate.

The withdrawals from the Joint Venture bank accounts were also not transfers of property of the estate, since the Debtor no longer owned an interest in the Joint Venture at the time of the withdrawals. The Plaintiff has not alleged that the sale of the Joint Venture was not effective, but merely seeks to avoid the transfer as fraudulent. As noted before, if the Plaintiff were able to avoid the transfer of the Joint Venture interest as a fraudulent conveyance it might be able to seek the funds under Section 550(a), but the funds were not property of the estate at the time in question and so their withdrawal was not a post-petition transfer of property of the estate. Finally, the payment of $2.8 million from Mr. Ruth to Mr. Gluth was not a transfer of property of the debtor - it was a transfer of property of Mr. Ruth. Presumably, the Plaintiff means to say that the $2.8 million are proceeds of the sale of the real estate, at least some of which was the Debtor's property. But, the Plaintiff has admitted in its pleadings that the sale of the real estate never closed, and has not alleged that title to

the real estate was ever transferred to Ruth, so the money could not constitute proceeds of a sale that never happened. Therefore, the Plaintiff has failed to state a cause of action under Section 549.

### III.  Turnover of Estate Property

11 U.S.C. § 542(a) requires an entity in possession of property that the trustee may use, sell or lease, or that the debtor may exempt, to deliver such property of the estate to the trustee. However, the Plaintiff has failed to give any factual support for its allegation that the Joint Venture is in possession of property of the estate. The Plaintiff merely alleges that the Debtor might have leased vehicles or equipment to the Joint Venture, and if so, the Joint Venture might have failed to return them. While a detailed description is not necessary for purposes of pleading, the Plaintiff must give enough of a description to demonstrate a plausible entitlement to relief and to give notice of what property it alleges is property of the estate. The vague description in the Adversary Complaint gives no such notice. Therefore, the Plaintiff's claim under Section 542(a) fails to state a claim for relief.

### IV. Motion to Strike

Upon timely motion by a party, a "court may strike from a pleading ... any redundant, immaterial, impertinent, or scandalous matter." Fed.R.Civ.P. 12(f)(2). The Defendant has asked that paragraphs 20-23 and 25-28 of the Plaintiff's complaint be stricken. Since the motion to dismiss is being granted on all counts in the Adversary Complaint, the motion to strike becomes moot.

## CONCLUSION

For the foregoing reasons, the Court will GRANT the Defendant's motion to dismiss each of the counts of the Adversary Complaint.  However, the Court will grant leave for the Plaintiff to file an amended adversary complaint, if it desires, within thirty days consistent with this opinion.


THEREFORE, IT IS ORDERED that

A separate order shall be entered pursuant to <u>Fed. R. Bankr. P.</u> 9021 giving effect to the determinations reached herein.


DATE:<u>November 19, 2009</u>

The Honorable Manuel Barbosa
United States Bankruptcy Judge

# CERTIFICATE OF MAILING

The undersigned hereby certifies that the attached Memorandum Opinion has been served via First Class Mail on November 19, 2009 to the following:

Aaron L. Hammer
Shira R. Isenberg
Freeborn & Peters LLP
311 S. Wacker Drive, Suite 3000
Chicago, IL 60606

Attorney Bradley T. Koch
Holmstrom & Kennedy PC
P.O. Box 589
Rockford, IL 61105

Office of the U. S. Trustee
780 Regent Street, Suite 304
Madison, Wisconsin 53715


Mimi Kuczynski, Judicial Secretary